UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FEDERAL INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. |
| v. | ) |
| | ) |
| JOINT ACTIVE SYSTEMS, INC., | ) |
| | ) |
| Defendant. | ) |

**FEDERAL INSURANCE COMPANY'S
COMPLAINT FOR DECLARATORY RELIEF**

Plaintiff, Federal Insurance Company, by and through its attorney, Janet R. Davis, for its Complaint for Declaratory Judgment states as follows:

**INTRODUCTION**

1. This is an action for declaratory judgment, brought pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, to determine and resolve questions of actual controversy involving two claims-made ForeFront Portfolio 3.0 insurance policies issued by Plaintiff Federal Insurance Company ("Federal"): (1) policy number 8255-5632 issued to "Bonutti Research, Inc." as the **Parent Organization** for the period December 10, 2018 to December 10, 2019 (the "18-19 Policy"); and (2) policy no. 8241-8642 issued to "Bonutti Orthopedic Services, LTD" as the **Parent Organization** for the period December 10, 2017 to December 10, 2018 (the "17-18 Policy," and together with the 18-19 Policy, the "Policies"). Defendant Joint Active Systems, Inc. ("JAS") is an **Insured Organization** under both Policies.

2. With respect to the 18-19 Policy, the parties dispute whether coverage for the lawsuit captioned *State of Illinois ex rel. Todd Mathy v. Joint Active Systems, Inc., et al.*, Case No. 19 L 29, filed in the Circuit Court for the Twenty-First Judicial Circuit of Illinois, Iroquois County (the "Lawsuit") is limited to an aggregate limit of $1,000,000 for **Defense Costs** only subject to a $1,000,000 retention because the Lawsuit is a **Claim** for **Regulatory Wrongful**

1

**Acts**.

3. With respect to the 17-18 Policy, the parties dispute whether Federal has a duty to defend or indemnify JAS under that policy in connection with a Civil Investigative Demand dated June 15, 2018 (the "CID") issued to JAS by the United States Department of Justice (the "DOJ") or the Lawsuit to the extent that JAS is seeking to relate the Lawsuit to the CID.

4. Federal seeks a declaration from this Court that: (1) because the Lawsuit is a **Claim** alleging **Regulatory Wrongful Acts**, coverage under the 18-19 Policy is limited to an aggregate limit of $1,000,000 for **Defense Costs** only subject to a $1,000,000 retention and a Coinsurance Percentage of 50%; and (2) Federal has no duty to defend or obligation to indemnify JAS for the CID or the Lawsuit under the 17-18 Policy.

## THE PARTIES

5. Federal is an Indiana company with its principal office located in Whitehouse Station, New Jersey.

6. JAS is an Illinois company with its principal office located in Effingham, Illinois.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Federal is an Indiana and New Jersey citizen and JAS is a citizen of Illinois. The amount in controversy exceeds the jurisdictional threshold of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the insured, JAS, is located in Effingham County, Illinois.

9. This Complaint for Declaratory Relief is brought pursuant to the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.* An actual, justiciable controversy exists between Federal and JAS that involves the rights and liabilities under two contracts of

insurance and this controversy may be resolved by a judgment in this action without regard to other lawsuits.

## THE LAWSUIT

10. The original complaint in the Lawsuit was filed, under seal, on November 9, 2019, by Relator Todd Mathy to recover damages and civil penalties on behalf of the State of Illinois pursuant to the Illinois Claims Fraud Prevention Act ("ICFPA"), 740 ILCS 92, *et seq*. The seal was subsequently lifted, and the Lawsuit was served on JAS on March 12, 2019. The original complaint is attached as **Exhibit A**.

11. The Lawsuit alleges that JAS is a company that manufactures and sells medical devices for elbows, knees and other joints designed to restore range of motion for patients recovering from injuries or medical procedures ("Stretch Devices").

12. The Lawsuit contends that since most private insurers do not provide coverage for Stretch Devices, JAS makes false claims by billing insurers for devices that insurers do cover. This practice is referred to as "upcoding" which allegedly defrauds private insurers and violates the ICFPA by causing those insurers to pay false claims for medical devices.

13. Specifically, the Lawsuit alleges that JAS violates the ICFPA by submitting claims using the Healthcare Common Procedure Coding System ("HCPCS") "L" codes for custom fabricated orthoses instead of the HCPCS "E" codes for Stretch Devices. It is further alleged that JAS' upcoding scheme violates the Orthotics, Prosthetics, and Pedorthics Practice Act.

14. It is also alleged that JAS conspired with the seven other defendants located outside of Illinois, all of which are durable medical equipment suppliers ("DME Supplier"). Instead of directly billing the patient's insurer, JAS often sells the device to a DME Supplier. The DME Supplier pays JAS for the device and then bills the insurer using upcoding. According to the Lawsuit, this fraud "launders" claims to insurers to ensure JAS is reimbursed

for devices not covered by insurers.

15. Finally, the Lawsuit alleges that the DME Suppliers violated the Home Medical Equipment and Services Provider License Act ("HMEA"), 225 ILCS 51, *et seq.*, which requires a license issued by the Illinois Department of Financial and Professional Regulation to provide home medical equipment and services to Illinois patients. JAS is licensed under HMEA and thus has no reason to utilize the DME Suppliers when providing its devices to Illinois customers. JAS nevertheless sells its devices to DME Suppliers which then sell the devices to Illinois patients. Five of the DME Suppliers allegedly violate HMEA because they are not licensed to provide home medical equipment and services to Illinois patients and HMEA authorizes the court to enjoin DME Suppliers from providing home medical equipment and services without a license.

16. On April 2, 2019, JAS first notified Federal of the Lawsuit.

17. On April 30, 2019, Federal issued a reservation of rights letter in connection with the Lawsuit. A copy of Federal's April 30, 2019 correspondence is attached as **Exhibit B**. That letter states that the Lawsuit is a **Claim** for a **Regulatory Wrongful Act** against JAS as defined in Endorsement No. 3 to the 18-19 Policy's D&O Coverage Part and, as such, Insuring Clause (C) is triggered. Accordingly, Federal agreed to provide a defense for the Lawsuit under the 18-19 Policy, but also stated that Federal would not be liable for **Loss**, other than **Defense Costs** for the Lawsuit, and that coverage for **Defense Costs** is subject to a $1,000,000 Retention.

18. A first amended complaint (the "FAC") was filed in the Lawsuit on October 15, 2019. A copy of the FAC is attached as **Exhibit C**. The allegations in the FAC are substantially the same as those in the original complaint.

19. On February 25, 2020, counsel for JAS challenged Federal's coverage position that the Lawsuit is a **Claim** for a **Regulatory Wrongful Act**. A copy of that correspondence is

4

attached as **Exhibit D**.

## THE CID

20.     The CID was issued to JAS on June 15, 2018 by the DOJ in the course of an investigation to determine whether JAS violated the Federal False Claims Act (the "FCA"). A copy of the CID is attached as **Exhibit E**.

21.     The CID states that the investigation concerns, among other things, allegations that JAS, with and through other entities, knowingly submitted, or caused the submission of, false claims to Medicare, Medicaid, and/or the Department of Veterans Affairs, for products and/or services at higher rates than were permissible given the nature of the products and/or services actually provided or the associated patient need.

22.     The CID seeks documents and answers to written interrogatories concerning JAS' relationship with New England Orthotic and Prosthetic Systems, LLC and, among other things, the coding system used by JAS in connection with submitting claims to Medicare, Medicaid, the Department of Veterans Affairs or any other governmental insurer and whether those payors have approved payment for a JAS device under a HCPCS "E" code or a HCPCS "L" code.

23.     On March 5, 2020, JAS, for the first time, alleged that the Lawsuit is related to the CID and that Federal should have been "covering [JAS'] case since 2018" under the 17-18 Policy. A copy of that correspondence is attached as **Exhibit F**.

24.     Additionally, on March 6, 2020, JAS conceded that its only notice to Federal of the CID was pursuant to the application for the 18-19 Policy and alleged discussions JAS' attorney had with an agent for Federal. A copy of that correspondence is attached as **Exhibit G**.

25.     On May 19, 2020, Federal issued coverage correspondence maintaining its position under the 18-19 Policy with respect to the Lawsuit and advising that to the extent that

JAS is now seeking to relate the Lawsuit back to the CID for coverage under the 17-18 Policy, no coverage is available for either the CID or the Lawsuit under that policy. A copy of that correspondence is attached as **Exhibit H**.

## THE 18-19 POLICY

26.     Federal issued ForeFront 3.0 Portfolio Policy No. 8255-5632 to "Bonutti Research, Inc." as the **Parent Organization** for the **Policy Period** December 10, 2018 to December 10, 2019. A copy of the 18-19 Policy is attached as **Exhibit I**.

27.     The 18-19 Policy's General Terms and Conditions defines **Organization**, in relevant part, to mean the **Parent Organization** and any **Subsidiary**. Endorsement No. 2 to the 18-19 Policy's General Terms and Conditions amends the definition of **Organization** to include "Joint Active Systems, Inc."

28.     The 18-19 Policy's Directors & Officers and Entity Liability Coverage Part (the "D&O Coverage Part") has a Maximum Aggregate Limit of Liability of $2,000,000 subject to a $15,000 self-insured retention for Insuring Clause (C). The D&O Coverage Part is the only coverage part potentially implicated by the Lawsuit.

29.     Insuring Clause (C) (Entity Liability Coverage) to the D&O Coverage Part provides that Chubb shall pay on behalf of an **Organization**, **Loss** on account of a **Claim** first made against the **Organization** during the **Policy Period**, or the Extended Reporting Period if applicable.

30.     A **Claim**, when used in reference to Insuring Clause (C), is defined to mean, in relevant part, any "written demand first received by an **Insured** for monetary damages or non-monetary relief," or any "civil proceeding commenced by the service of a complaint or similar pleading…against an **Organization** for a **Wrongful Act**, including any appeal therefrom." **Defense Costs** are defined to mean "that part of **Loss** consisting of reasonable costs, charges, fees (including attorneys' fees and experts' fees) and expenses (other than regular or overtime

wages, salaries, fees or benefits of **Insured Persons**) incurred in investigating, defending, opposing or appealing any **Claim** and the premium for appeal, attachment or similar bonds." An **Insured** is defined to mean any **Organization** and any **Insured Person**.

31. Endorsement No. 3 amends the D&O Coverage Part, by adding "Health Care Sublimits of Liability" of $1,000,000 for **Defense Costs** for **Claims** for **Regulatory Wrongful Acts**. Endorsement No 3. States that the Health Care Sublimits of liability "shall be part of, and not in addition to the Maximum Aggregate Limit of Liability set forth in Item 2 of the D&O Declarations." Endorsement No. 3 further amends the Declarations to the D&O Coverage Part by amending Item 4 to add a $1,000,000 Retention applicable to **Claims** for **Regulatory Wrongful Acts**, and adding Item 6, which states that there is a 50% Coinsurance Percentage for **Regulatory Wrongful Acts**.

32. A **Regulatory Wrongful Act** is defined at Endorsement No. 3 to mean "any actual or alleged violation of the Federal False Claims Act, any federal, state or local anti-kickback, self-referral or healthcare fraud and abuse law, or any similar federal, state or local statutory or common law anywhere in the world, or amendments to or regulations promulgated under any such law; provided that **Regulatory Wrongful Act** shall not include any employment-related **Wrongful Act**."

33. Section 6(a) of Endorsement No. 3 further amends the D&O Coverage Part by stating that solely with respect to any **Claim** for a **Regulatory Wrongful Act**, Federal "shall not be liable for **Loss**, other than **Defense Costs**, on account of any **Claim** for a **Regulatory Wrongful Act**."

## THE 17-18 POLICY

34. Federal issued ForeFront 3.0 Portfolio Policy No. 8241-8642 to "Bonutti Orthopedic Services, LTD" as the **Parent Organization** for the Policy Period December 10, 2017 to December 10, 2018. A copy of the 17-18 Policy is attached as **Exhibit J**.

35. The 17-18 Policy's General Terms and Conditions defines **Organization** to mean the **Parent Organization** and any Subsidiary. Endorsement No. 2 to the General Terms and Conditions amends the definition of **Organization** to include "Joint Active Systems, Inc."

36. The 17-18 Policy's General Terms and Conditions defines **Related Claims** to mean "all **Claims** for **Wrongful Acts** based upon, arising from, or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events."

37. Section IX(B) of the 17-18 Policy's General Terms and Conditions, requires that all notices to Federal under the 17-18 Policy of any **Claim**, shall be given in writing to one of the following addresses: (1) specialtyclaims@chubb.com; or (2) Attn: Claims Department, Chubb Group of Insurance Companies, 82 Hopmeadow St., Simsbury, CT 06070-7683.

38. The 17-18 Policy's D&O Coverage Part has a Maximum Aggregate Limit of Liability of $2,000,000 subject to a $10,000 self-insured retention for Insuring Clause (C). Again, the D&O Coverage Part is the only coverage part potentially implicated by the CID or the Lawsuit.

39. Insuring Clause (C) (Entity Liability Coverage) to the D&O Coverage Part provides that Federal shall pay, on behalf of an **Organization**, **Loss** on account of a **Claim** first made against the **Organization** during the **Policy Period**, or the Extended Reporting Period if applicable.

40. A **Claim**, when used in reference to Insuring Clause (C), is defined to mean, in relevant part, any "written demand first received by an **Insured** for monetary damages or non-monetary relief," or any "civil proceeding commenced by the service of a complaint or similar pleading…against an **Organization** for a **Wrongful Act**, including any appeal therefrom." **Loss** is defined to mean the amount which an **Insured** becomes legally obligated to pay as a result of any **Claim**, including **Defense Costs. Defense Costs** are defined as "that part of **Loss**

8

consisting of reasonable costs, charges, fees (including attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees or benefits of **Insured Persons**) incurred in investigating, defending, opposing or appealing any **Claim** and the premium for appeal, attachment or similar bonds." An **Insured** is defined to mean any **Organization** and any **Insured Person**, and **Insured Person** means "any **Executive** or **Employee** of any **Organization** acting either in his or her capacity as such or in an **Outside Capacity**."

41. In relevant part, Section VI.(A) of the D&O Coverage Part, requires as a condition precedent to coverage, that the **Insured** give Federal "written notice of any **Claim** as soon as practicable after the chief executive officer, chief financial officer, in-house general counsel, or any person with the responsibility for the management of insurance claims (or any equivalent position to any of the foregoing) of an **Organization** becomes aware of such **Claim**."

42. Endorsement No. 3 amends the D&O Coverage Part by, among other things, adding a Health Care Fraud and Abuse Exclusion. That exclusion provides that Federal "shall not be liable under this Coverage Part for **Loss** on account of any **Claim** based upon, arising from or in consequence of any **Health Care Fraud & Abuse Wrongful Act**." **Health Care Fraud & Abuse Wrongful Act** is defined at Endorsement No. 3 to mean "any actual or alleged violation of the Federal False Claims Act, any federal, state or local anti-kickback, self-referral or healthcare fraud and abuse law, or any similar federal, state or local statutory or common law anywhere in the world, or amendments to or regulations promulgated under any such law; provided that **Health Care Fraud & Abuse Wrongful Act** shall not include any employment-related **Wrongful Act**."

## COUNT I: DECLARATION

### THE ONLY COVERAGE AVAILABLE FOR THE LAWSUIT UNDER THE 18-19 POLICY IS FOR DEFENSE COSTS SUBJECT TO THE HEALTH CARE SUBLIMIT OF LIABILITY BECAUSE THE LAWSUIT IS A CLAIM FOR A REGULATORY WRONGFUL ACT

43. Federal repeats and realleges paragraphs 1 through 42 above as and for paragraph 43 of this Complaint for Declaratory Relief.

44. Insuring Clause (C) of the 18-19 Policy provides that Federal shall pay, on behalf of an **Organization**, **Loss** on account of a **Claim** first made against the **Organization** during the **Policy Period**. JAS is an **Organization** as that term is defined at Endorsement No. 2 to the 18-19 Policy's General Terms and Conditions.

45. When used in reference with Insuring Clause (C), Entity Liability Coverage, **Claim** is defined in relevant part to mean a "civil proceeding commenced by the service of a complaint or similar pleading" against an **Organization**.

46. Therefore, the Lawsuit constitutes a **Claim** under the 18-19 Policy because it is a civil proceeding commenced by the service of a complaint against JAS, which is an **Organization**.

47. Endorsement No. 3 to the D&O Coverage Part, however, limits coverage for **Claims** for **Regulatory Wrongful Acts**, which are defined in relevant part, to mean "any actual or alleged violations of the Federal False Claims Act, any federal, state or local anti-kickback, self-referral or healthcare fraud and abuse law, or any similar federal, state or local statutory or common law anywhere in the world, or amendments to or regulations promulgated under any such law…"

48. Endorsement No. 3 also states that the only coverage available for the **Claims** for **Regulatory Wrongful Acts** is the Health Care Sublimits of Liability, which is an aggregate limit of $1,000,000 for **Defense Costs**, subject to a $1,000,000 Retention and a Coinsurance Percentage of 50%.

49. The Lawsuit alleges violations of the ICFPA, which is a state law "similar" to the FCA. The FCA establishes civil and criminal liability for knowingly presenting false claims (related to heath care or otherwise) to the government and allows private citizens to file whistleblower lawsuits on behalf of the government against entities that have engaged in fraud that causes financial damage to the government. *See* 31 U.S.C. § 3729, *et seq.* The ICFPA also establishes civil and criminal liability for knowingly presenting false claims (health care or otherwise) and allows whistleblowers to file a lawsuit on behalf of the State of Illinois against those engaged in fraud – the only difference being that the IFCPA governs fraud perpetrated against private insurers, as opposed to the federal government. *See* 740 ILCS 92, *et seq.* Additionally, the Lawsuit alleges that JAS manufactures and supplies medical devices for elbows, knees and other joints designed to restore range of motion for patients recovering from injuries or medical procedures and that JAS fraudulently submitted claims to private insurers for these devices. In this context, the alleged violations of the ICFPA by JAS set forth in the Lawsuit constitute health care fraud and abuse. For these reasons, the allegations in the Lawsuit fall squarely within the broadly-worded definition of **Regulatory Wrongful Acts**.

50. Indeed, in the March 5, 2020 email attached as **Exhibit F**, JAS acknowledges that the IFCPA is "similar" to the FCA since JAS asserts that its case initiated in 2018 with the CID. The CID plainly states that the DOJ is investigating JAS pursuant to the FCA. Moreover, the issues being investigated under the FCA as evidenced by the CID are analogous to those set forth in the Lawsuit, i.e. the allegedly fraudulent use of HCPCS codes by JAS and/or its customers in order to induce reimbursement by a government payor and/or a private insurance payor.

51. Accordingly, because the Lawsuit is a **Claim** alleging **Regulatory Wrongful Acts**, the only coverage available for the Lawsuit under the 18-19 Policy is for the Healthcare Sublimits of Liability set forth at Endorsement No. 3, which is a limit of $1,000,000 for

11

**Defense Costs**, subject to a $1,000,000 Retention and a Coinsurance Percentage of 50%.

## COUNT II: DECLARATION

### FEDERAL HAS NO DUTY TO DEFEND OR INDEMNIFY JAS FOR THE CID OR THE LAWSUIT UNDER THE 17-18 POLICY

52. Federal repeats and realleges paragraphs 1 through 51 above as and for paragraph 52 of this Complaint for Declaratory Relief.

53. Insuring Clause (C) of the 17-18 Policy provides that Chubb shall pay, on behalf of an **Organization**, **Loss** on account of a **Claim** first made against the **Organization** during the **Policy Period**, or the Extended Reporting Period if applicable.

54. With respect to Insuring Clause (C), the definition of **Claim** includes a written demand for monetary damages or non-monetary (including injunctive) relief, a civil proceeding, or a formal administrative or regulatory proceeding (but only while pending against an **Insured Person**) against an **Organization** for a **Wrongful Act**. **Wrongful Act** means "any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty…allegedly committed by an **Organization**."

55. The CID is not a civil proceeding, nor is it a formal administrative proceeding, and, even if it was, that proceeding is not pending against an **Insured Person**. Furthermore, the CID is not a written demand for monetary damages or non-monetary (including injunctive) relief. The CID just seeks documents and responses to interrogatories from JAS.

56. As such, because the CID is not a **Claim**, for this reason alone, no coverage is available for the CID (or the Lawsuit to the extent JAS is seeking to relate the Lawsuit back to the CID) under the 17-18 Policy.

57. Regardless, even if the CID was a **Claim** under the 17-18 Policy, which it is not, coverage would also be precluded because the CID was not properly reported.

58. The 17-18 Policy requires that notice of any **Claim** shall be given in writing to either specialtyclaims@chubb.com, or Attn: Claims Department, Chubb Group of Insurance

12

Companies, 82 Hopmeadow St., Simsbury, CT 06070. Pursuant to Section VI. of the D&O Coverage Part, proper reporting of a **Claim** is a condition precedent to coverage.

59. In its March 6, 2020 email, **Exhibit G**, JAS concedes that the only report to Federal of the CID was pursuant to the application for the 18-19 Policy and pursuant to alleged discussions between JAS' attorney and an agent for Federal. This is not proper notice of a **Claim** under the 17-18 Policy. Therefore, because the CID was not properly reported to Federal which is a condition precedent to coverage, even if the CID was a **Claim**, coverage is not available for the CID (or the Lawsuit to the extent JAS is seeking to relate it to the CID) under the 17-18 Policy.

60. Finally, even if JAS could establish that the CID was a **Claim** properly reported under the 17-18 Policy, coverage would nevertheless be precluded for the CID and the Lawsuit (to the extent JAS is seeking to relate it to the CID) by the Health Care Fraud and Abuse Exclusion set forth at Endorsement No. 3 to the D&O Coverage Part.

61. The Health Care Fraud and Abuse Exclusion states that Federal "shall not be liable under this Coverage Part for **Loss** on account of any **Claim** based upon, arising from or in consequence of any **Health Care Fraud & Abuse Wrongful Act**." **Health Care Fraud & Abuse Wrongful Act** is defined, in relevant part, to mean "any actual or alleged violation of the Federal False Claims Act, any federal, state or local anti-kickback, self-referral or healthcare fraud and abuse law, or any similar federal, state or local statutory or common law anywhere in the world, or amendments to or regulations promulgated under any such law…"

62. The CID was issued pursuant to the FCA and specifically states that that the DOJ is investigating potential violations of the FCA. As such, the CID is plainly excluded by virtue of the Health Care Fraud and Abuse Exclusion.

63. Further, to the extent that JAS is seeking to relate the Lawsuit back to the 17-18 Policy because it is related to the CID, coverage for the Lawsuit would also be excluded by the

13

Health Care Fraud and Abuse Exclusion.

64. **Related Claims** are defined in the 17-18 Policy to mean "all **Claims** for **Wrongful Acts** based upon, arising from, or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events."

65. By attempting to related the Lawsuit back to the CID, JAS necessarily admits that the Lawsuit is based upon or arises out of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events as the CID, i.e. that the Lawsuit alleges violations of a state law similar to the FCA.

66. Accordingly, the Lawsuit would be similarly precluded from coverage under the 17-18 Policy by virtue of the Health Care Fraud and Abuse Exclusion.

67. For all of these reasons, Federal does not owe a duty to defend or obligation to indemnify JAS for the CID or the Lawsuit under the 17-18 Policy.

**WHEREFORE**, Federal Insurance Company respectfully requests that this Court enter judgment in its favor and against Joint Active Systems, Inc.:

A. Declaring that the only coverage available for Joint Active Systems, Inc. under ForeFront Portfolio 3.0 Policy No. 8255-5632 issued by Federal Insurance Company to "Bonutti Research, Inc." as the **Parent Organization** for the period December 10, 2018 to December 10, 2019 for the lawsuit captioned *State of Illinois ex rel. Todd Mathy v. Joint Active Systems, Inc., et al.*, Case No. 19 L 29, filed in the Circuit Court for the Twenty First Judicial District of Illinois, Iroquois County is for the Healthcare Sublimits of Liability set forth at Endorsement No. 3 of the D&O Coverage Part, which is a limit of $1,000,000 for **Defense Costs**, subject to a $1,000,000 Retention and a Coinsurance Percentage of 50% because the lawsuit is **Claim** alleging a **Regulatory Wrongful Acts**; and

B. Declaring that Federal Insurance Company does not have a duty to defend or obligation to indemnify Joint Active Systems, Inc. in connection with: (1) the Civil Investigative Demand issued to Joint Active Systems, Inc. by the United States Department of Justice dated June 15, 2018; or (2) with respect to the lawsuit captioned *State of Illinois ex rel. Todd Mathy v. Joint Active Systems, Inc., et al.*, Case No. 19 L 29, filed in the Circuit Court for the Twenty First

        Judicial District of Illinois, Iroquois County under ForeFront Portfolio 3.0 Policy No. 8241-8642, issued by Federal Insurance Company to "Bonutti Orthopedics Services, LTD" as the **Parent Organization** for the period December 10, 2017 to December 10, 2018; and

C.    Awarding such other and further relief as the Court finds just and proper.

Dated: May 19, 2020

                              Respectfully submitted,

                        By:    /s/ Janet R. Davis
                                  Janet R. Davis
                                  Cozen O'Connor
                                  123 N. Wacker Dr., Suite 1800
                                  Chicago, IL 60606
                                  312-382-3100 (phone)
                                  312-382-8910 (fax)
                                  jrdavis@cozen.com

                                  *Attorney for Federal Insurance Company*